IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALICE M. CARR | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ABINGTON MEMORIAL HOSPITAL, | : | NO. 23-1822 |
| et al. | : | |

MEMORANDUM

Bartle, J.                                          August 8, 2024

Plaintiff Alice M. Carr, after exhausting internal claims procedures, has sued defendants Thomas Jefferson University ("Jefferson") and the Jefferson Defined Benefit Plan ("Jefferson Plan").

She claims in Count I of the complaint that she is due pension benefits pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), under the Jefferson Plan, into which was merged the Abington Memorial Hospital Plan ("AMH Plan") on January 1, 2018.

Plaintiff alleges in Count II that Jefferson, as the administrator for the Jefferson Plan, failed to furnish her in a timely manner with copies of her pension benefit statement, her personnel and wage records from 1997, and a January 1998 pension valuation.  She maintains that Jefferson is liable for a

document penalty of $110 per day[1] for each of the three items withheld under Section 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1).[2]

The parties agreed early on that this action would be decided on the administrative record without any further discovery.  Before the court are cross-motions for summary judgment (Doc. # 46, 47).  Defendants in the alternative have filed a motion for judgment on the administrative record.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A

---

1.    Section 502(c)(1) of ERISA states that the fine is $100 per day.  However, for violations occurring after July 29, 1997, the Debt Collection Improvement Act of 1996 raised the daily limit to $110 per day.  See Final Rule Relating to Adjustment of Civil Monetary Penalties, 62 Fed. Reg. 40696 (July 29, 1997).

2.    On August 25, 2023, plaintiff voluntarily dismissed all claims against Boston Safe Deposit and Trust Company without prejudice.  Plaintiff also alleged that defendants breached their fiduciary duties under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) (Count III).  On November 28, 2023, the court granted defendants' motion to dismiss in part.  It dismissed Count III in its entirety.  Order, Carr v. Jefferson Defined Benefit Plan, Civ. A. No. 23-1822 (E.D. Pa. Nov. 28, 2023) (Doc. # 23).  Count II was dismissed as to Abington Memorial Hospital ("AMH"), the AMH Plan, and the Jefferson Plan. Count I was dismissed as to AMH and the AMH Plan.  Id.

dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  The court must draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient evidence in the record for a reasonable factfinder to find for the nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.  In addition, Rule 56(e)(2) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

Under Rule 52(a) of the Federal Rules of Civil Procedure, "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."  Unlike on a motion for summary judgment, the court may make determinations as to bias or credibility in deciding a motion on an

administrative record.  See, e.g., Dwyer v. Unum Life Ins. Co. of Am., 548 F. Supp. 3d 468, 486 n.8 (E.D. Pa. 2021).

                                    II

          The following facts, relevant to Count I alleging denial of Plan benefits, are undisputed.

          Plaintiff was hired as a relief nurse by Abington Memorial Hospital on January 13, 1997 at a rate of $16.18 per hour, plus a shift differential when applicable.  Between 1997 and 2009, plaintiff worked part-time at AMH in various capacities.  On May 23, 2010, plaintiff was hired as a full-time employee.

          On May 23, 2012, plaintiff injured her back while working at AMH and received workers' compensation payments from July 5, 2012 through April 2, 2015.  She did not work at AMH during that period.  AMH terminated her employment on or about April 30, 2013.

          As an employee at AMH, she was a participant in the AMH Plan.  As noted above, on January 1, 2018, that plan merged into the Jefferson Defined Benefit Plan.  Since plaintiff was terminated prior to the plans' merger, her eligibility is determined by the terms of the AMH Plan.[3]  Under its terms, a

_____

3.   As part of the administrative record, the parties rely on the "Pension Plan of Abington Memorial Hospital, Amendment and Restatement, Effective January 1, 2012," to form the basis of AMH's obligations to plaintiff.

                                   -4-

participant has a vested interest in the pension plan after completing five years of qualifying service of 1,000 or more hours of work in each calendar year.  Participants in the AMH Plan receive one hour of service for each hour that they work.

The parties agree that plaintiff has at least four years of qualifying service: 2003, 2010, 2011, and 2012.  The dispute between parties focuses on whether plaintiff had 1,000 hours of qualifying service for 1997, the required fifth year, so as to have a vested pension benefit.

On May 31, 2011, pursuant to Section 105(a)(1)(A)(ii) of ERISA, 29 U.S.C. § 1025(a)(1)(A)(ii), Francis J. Cummings, Director of Corporate Benefits at AMH, sent plaintiff a letter entitled "Pension Plan of Abington Memorial Hospital Annual Benefit Statement as of January 1, 2011."  That letter attached a pension benefit statement which simply enumerated different pension payments for which plaintiff would be eligible once her pension vested.  A footnote in the statement advised her that as of January 1, 2011 she did not have a vested pension:

> You are 0% vested in this benefit.  You are estimated to become 100% vested in this benefit on January 1, 2014 assuming you remain an active member of the Pension Plan of Abington Memorial Hospital and earn 1,000 hours of service in each completed future year through this date.

Plaintiff submitted her formal claim for pension benefits with Jefferson on January 7, 2022 after the AMH Plan

-5-

merged with the Jefferson Defined Benefit Plan.  The parties do not dispute that the terms of the Jefferson Plan control administration and claims procedure.  See Jefferson Plan, effective January 1, 2020, art. XI § 11.6.

On July 5, 2022, Jefferson denied plaintiff's claim. Gregory Stoner, Vice President of Total Rewards at Jefferson, cited twenty-six items that he considered in making its determination.  He noted it was AMH's practice to "count[] all 'hours worked' by Ms. Carr 'toward her pension.'"  This practice was "memorialized" in a December 2009 email between plaintiff and Christine Tierney, Director of Employment and Compensation at AMH.  In Stoner's denial, he relied in part on various summary reports produced by Mercer, a global consulting company that provides human resources and financial consulting services and was responsible for maintaining employee records for the AMH Plan during the relevant periods.  Finally, he found the Jefferson Plan correctly credited plaintiff hours on the basis of her leave of absence in 2012.

Plaintiff, on July 19, 2022, submitted an internal appeal of Jefferson's determination.  In support of her appeal, she submitted her social security earnings records from 1997 through 2013.  That submission showed that in 1997 she was paid $16,318 rather than $16,168.46, the amount the Jefferson Plan recorded as her compensation for that plan year.  Plaintiff

-6-

argued in her appeal that her earnings as recorded by the Social
Security Administration demonstrated the Jefferson Plan
undercounted her hours.  Plaintiff outlined this discrepancy as
she understood it:

> The problem with the Mercer binder reports
> you provided on September 29th, is that they
> do not show date ranges for the data or pay
> period ending dates which almost always
> straddle the December 31 end date of
> calendar years.  That is why the reports
> from the first week of January in 2000,
> 2006, 2009 and 2011 give the annual
> valuations for the previous years.  That is
> also the only rational explanation for why
> the Mercer report only shows 1997 pay of
> $16,168.46 whereas the Social Security
> record shows AMH actually paid Ms. Carr
> $16,318 in 1997.

Based on her hourly rate of $16.18 and her total 1997
compensation of $16,318, plaintiff maintained she should have
been credited with 1,009 hours for the 1997 plan year
(16,318/16.18 = 1,009).

Stoner denied plaintiff's appeal in a letter dated
November 15, 2022.[4]  He explained that:

> [T]he Plan uses a different definition of
> compensation than does the Social Security
> Administration.  As such, variances between
> Jefferson's/Mer[c]er's wage figures and the
> Social Security Administration's wage figures
> are <u>not</u> indicative of an error; rather, such
> variances are expected.

---

4.   The record does not disclose when she received the letter.

The AMH Plan defines compensation as "the total earnings prior to withholding, <u>paid</u> to a Participant by the Employer, including bonuses paid before May 1, 1987 and all overtime pay, but excluding expense allowances or reimbursements." (emphasis added).  Stoner noted that the Social Security Administration uses a different definition of compensation.  Neither definition talks about the number of hours worked or enables one to calculate the number of hours worked in any time period.

Stoner stated it was not reasonable to infer that plaintiff actually worked 1,009 hours in 1997 on the basis of her total compensation.  Plaintiff arrived at that number by dividing her compensation of $16,318 for social security purposes by her hourly rate of $16.18.  According to Stoner, such a calculation assumed, without any basis, that she did not otherwise receive any premium pay for working a shift on a weekend or holiday and did not receive any overtime or bonuses.  AMH, Stoner explained, had "long had a practice of paying its health care employees" such premium pay.  Thus, plaintiff's evidence of her earnings as recorded by the Social Security Administration was not in his view a reliable record to rebut the Mercer records.  The Mercer records, which all corroborate each other, are the only evidence that showed the actual number of hours plaintiff worked.  The social security records in

contrast do not list the number of hours worked but only earnings paid.

For the above reasons, Jefferson determined that plaintiff had 950 hours of service for the 1997 calendar year and therefore did not have a vested pension benefit.

III

First, defendants argue that plaintiff's claim for benefits is time-barred because her claim accrued when she was terminated on April 30, 2013 from her position as a nurse at AMH.  She did not file suit until May 12, 2023, over ten years later.

Because ERISA does not contain a statute of limitations for denial-of-benefits claims,[5] the analogous statute of limitations of the foreign state ordinarily governs.  Gluck v. Unisys Corp., 960 F.2d 1168, 1180 (3d Cir. 1992).  Defendants are correct that, in Pennsylvania, the most analogous state cause of action to a claim for denial of pension benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), is common law breach of contract.  See Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 305-06 (3d Cir. 2008).  The

_____

5.  ERISA contains a statute of limitations for claims alleging a breach of fiduciary duty but does not identify a statute of limitations for non-fiduciary claims.  See Syed v. Hercules, Inc., 214 F.3d 155, 159 (3d Cir. 2000).  Both claims brought by plaintiff are non-fiduciary claims.

applicable statute of limitations for such a claim is four years.  Id.; 42 Pa. Cons. Stat. § 5525(8).

Federal law governs the date when a claim accrues under ERISA, even if a state statute of limitations is being borrowed.  Romero v. Allstate Corp., 404 F.3d 212, 221 (3d Cir. 2005).  The federal "discovery rule" holds that a claim accrues when a plaintiff discovers or should have discovered the injury that forms the basis of his or her claim.  Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520 (3d Cir. 2007).  In the case of a claim for denial of benefits under ERISA, a claim accrues when there is a clear indication of repudiation.  There does not have to be a formal denial if the repudiation to the participant is clear and is known or should have been known.  A clear repudiation can occur when the plan pays an erroneously calculated benefit award which is less than the amount to which the participant is entitled.  See id. at 521-22; see also Keen v. Lockheed Martin Corp., 486 F. Supp. 2d 481, 489 (E.D. Pa. 2007).

The fact that plaintiff brought this lawsuit more than four years after she stopped working at AMH, however, does not end the inquiry.  In lieu of an otherwise applicable statute of limitations, a plan may impose a contractual limitations period on the time by which a participant must file suit as long as the time period is reasonable and the otherwise applicable statute

-10-

of limitations does not forbid any shortening of the limitations
period.  Heimeshoff v. Hartford Life & Accident Ins. Co., 571
U.S. 99, 105-09 (2013).  Jefferson has adopted its own
limitations period here.  Under the terms of the Jefferson Plan,
which controls the administration of plaintiff's claim,

> The deadline to file legal action that
> relates to the Plan and seeks a remedy . . .
> is the later of (1) 30 months after the
> claimant knew or reasonably should have
> known of the principal facts on which the
> claim is based, or (2) six (6) months after
> the claimant has exhausted the claims and
> review procedures set forth above.

Jefferson Plan, effective January 1, 2020, art. XI § 11.6(h)
(emphasis added).  This contractual provision is not
unreasonably short, and the parties cite no state law that
imposes an impediment to its validity.

Here, the limitations period in the Jefferson Plan
supersedes the Pennsylvania four-year statute of limitations.
Under the Plan, plaintiff had the option of filing this action
no later than 30 months after she knew or reasonably should have
known of the principal facts on which the claim is based or the
option of filing no later than six months after she exhausted
the Plan's claims and review procedures.  Under the first
option, the federal discovery rule is incorporated.  Under the
second option, that discovery rule is not included.  Under the
second option the limitations period clearly began to run, that

-11-

is accrued, when plaintiff exhausted those procedures, not at some earlier period even if she knew or should have known of the principal facts on which her claim is based.  The accrual date under the second option was November 15, 2022.  If the time began to run at an earlier date, the second option would be meaningless.  Plaintiff filed her complaint on May 12, 2023, three days before the window closed.  Plaintiff had a right to rely on the Plan language which was drafted by the employer.

The court rejects for the reasons stated above, the defendants' argument that the plaintiff's claim accrued when she lost her job at AMH on April 30, 2013 and thus plaintiff's claim is time-barred by the Pennsylvania four-year statute of limitations.  Miller v. Fortis Benefits Insurance Co., on which defendants rely, is inapposite.  There, the Plan incorporated the state statute of limitations.  Consequently, the federal discovery rule analysis with respect to accrual was central to whether the claim was filed too late.  Here, in contrast, the specific language of the Jefferson Plan overrides the applicability of any state statute of limitations with its accrual analysis to the extent that that analysis is inconsistent with the plan language.

Accordingly, defendants' motion for summary judgment on the ground that her claim is time-barred will be denied.

IV

The court turns now to the parties' cross-motions for summary judgment related to plaintiff's claim for benefits.[6] Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), a plan participant may bring an action to recover benefits under the terms of their employee benefit plan.  Section 503 of ERISA requires that the employee benefit plan "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  29 U.S.C. § 1133(2).

A court reviews de novo an administrator's decision unless the plan grants discretionary authority to the administrator to determine eligibility and interpret plan terms. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The parties agree that Jefferson, as the administrator of the Jefferson Plan, has discretionary authority.  Therefore, the court's review is limited to whether the decision was arbitrary and capricious, that is, made without reason, unsupported by

---

6.  Appellate courts are divided as to whether a court may resolve factual disputes on summary judgment in the context of ERISA benefits cases.  See Avenoso v. Reliance Standard Life Ins. Co., 19 F.4th 1020, 1024 (8th Cir. 2021).  But see Doe v. Harvard Pilgrim Health Care, Inc., 974 F.3d 69, 72 (1st Cir. 2020).  Our Court of Appeals has regularly considered cross-motions for summary judgment.  See, e.g., Noga v. Fulton Fin. Corp. Emp. Benefit Plan, 19 F.4th 264, 266, 272 (3d Cir. 2021).

substantial evidence, or erroneous as a matter of law.  Doroshow
v Hartford Life & Accident Ins. Co., 574 F.3d 230, 234 (3d Cir.
2009).  When an administrator both adjudicates and pays claims,
the court should consider this conflict of interest as one
factor in determining whether there has been an abuse of
discretion.  Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117
(2008).  Here, since Jefferson is both the plan administrator
and the plan sponsor, a conflict of interest exists.

An employer is required to maintain records
"sufficient to determine the benefits due or which may become
due to such employees" under Section 209 of ERISA, 29 U.S.C.
§ 1059(a)(1).  Unless more than one employer adopts the plan,
which is not the case for the AMH Plan, ERISA does not impose an
obligation on the plan administrator to retain such records.
Plaintiff does not cite any authority concluding otherwise.
Defendants cite Haskett v. Southern Benefit Administrators,
Inc., No. 22-5817, 2023 U.S. App. LEXIS 14136 (6th Cir. June 6,
2023) for the proposition that a plan is not required to
maintain detailed employment records, such as payroll records or
timesheets.  In that action, the Sixth Circuit concluded that
summary reports, such as those kept by Mercer for the AMH Plan,
to be sufficient.  Id. at *16.

Plaintiff argues that Jefferson's decision was
arbitrary and capricious both because it relied on

unsubstantiated summary records developed by Mercer and because the plan administrator did not consider plaintiff's social security records.  Plaintiff thus maintains that the plan administrator's review was not "full and fair."  For review to be full and fair, the claimant must know what evidence the decisionmaker has relied upon, have an opportunity to address the accuracy and reliability of the evidence, and be provided the opportunity for the decisionmaker to consider the evidence presented to both parties in reaching his or her decision.  See Teeter v. Supplemental Pension Plan of Consol. Rail Corp., 705 F. Supp. 1089, 1095 (E.D. Pa. 1989) (citing Grossmuller v. Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am., 715 F.2d 853, 858 n.5 (3d Cir. 1983)); see also 29 C.F.R. § 2560.503-1(g)(1)(i)-(iv).

Plaintiff provided her social security earnings records to Jefferson to be considered as part of her appeal of its denial of her pension benefits.  At that point, the plan administrator was obligated to consider this evidence in adjudicating her appeal.  See Teeter, 705 F. Supp. at 1096.  The plan administrator did so.

Stoner, the Vice President of Total Rewards at Jefferson, noted in his denial of plaintiff's appeal that he considered her earnings records for social security purposes from 1997 through 2013.  Plaintiff's social security earnings

-15-

records demonstrate she earned $16,318 in the 1997 calendar

year.  Based on Stoner's description of what he reviewed, he

considered plaintiff's social security earnings records in

making his determination.

Stoner made clear that he assessed the evidence

presented both by the Jefferson Plan and plaintiff in reaching

his determination.  He provided a detailed explanation for why

the total social security earnings did not match the Jefferson

Plan summary records.  He explained that a variance existed

because, as permitted by ERISA:

> [T]he Plan uses a different definition of
> compensation than does the Social Security
> Administration.  As such, variances between
> Jefferson's/Mer[c]er's wage figures and the
> Social Security Administration's wage
> figures are <u>not</u> indicative of an error;
> rather, such variances are expected.

Stoner further explained that plaintiff's calculation

of 1,009 hours presumes she did not receive any "premium pay for

different shifts (e.g., weekends and holidays, overtime) or

bonuses, all of which AMH has long had a practice of paying its

health care employees (including in 1997)[.]"  Plaintiff

presented no affidavit or other evidence that she was an

exception and never received any differential pay in 1997.

Stoner concluded that the Jefferson Plan's record of 950 hours

worked in 1997, supported by multiple records maintained by

Mercer, "is reliable, and that [plaintiff's] argument to the

contrary is unpersuasive." Jefferson's explanation has remained consistent over time.

There is no evidence before the court that the records contemporaneously maintained by Mercer, an outside entity, are incorrect. The records show plaintiff's total hours of service that the Jefferson Plan has counted for each plan year. Each document that states her hours worked corroborates the others. These summary reports serve as the historical record for all plan participants. The Social Security records submitted by plaintiff show only her annual earnings. They do not record the number of hours worked per year for those earnings. Plaintiff is simply drawing an inference that she worked more than 1,000 hours in 1997 based on her hourly rate. Stoner is relying on the content of the Mercer records which chronicle the actual number of hours plaintiff worked. It was not unreasonable for the plan administrator to rely on those records.

Finally, the court must take into account that Jefferson, the plan administrator, was conflicted. "The Supreme Court's broad view of whether a conflict of interest exists, therefore, encompasses an arrangement where an employer makes fixed contributions to a plan, evaluates claims, and pays claims through a trust." Miller v. Am. Airlines, Inc., 632 F.3d 837, 847 (3d Cir. 2011). It is undisputed that Jefferson is the plan sponsor of the Jefferson Defined Benefit Plan, which is funded

-17-

through a trust.  Therefore Jefferson is responsible for both paying claims as well as evaluating the claim's validity.

    This conflict of interest must be balanced with other factors.  Our Court of Appeals has explained that a court should only "disturb an administrator's decision based on a conflict of interest if evidence either suggests the conflict actually infected the decision[-]making or if the conflict is one last straw that calls a benefits determination into question." Dowling v. Pension Plan for Salaried Emps. Of Union Pac. Corp. & Affiliates, 871 F.3d 239, 251 (3d Cir. 2017).  Where there is no evidence that a conflict has affected the administrator's decision-making or that there were additional procedural factors that suggest the benefits determination was incorrect, the court should apply deference to the decision.  Id.

    In this action, plaintiff has failed to provide evidence demonstrating that the conflict influenced Jefferson's decision-making.  Beyond the fact that Jefferson is the plan sponsor, there is no further information identified by plaintiff that would suggest Jefferson's decision-making was impacted by this conflict.  Further, she has not identified any procedural irregularities.  In Miller v. American Airlines, our Court of Appeals overturned a benefits determination on the basis that the determination was arbitrary and capricious.  632 F.3d at 856.  In contrast to the situation here, the court there found

-18-

not only that the administrator had a conflict of interest, but also that the administrator reversed its decision without new medical information, relied on non-existent plan requirements in making its determination, and failed to comply with Section 503 of ERISA, 29 U.S.C. § 1133.  Miller, 632 F.3d at 848-52.

In this action, Jefferson has maintained its position in denying plaintiff's benefits, relies on its uncontested, contemporaneously maintained, records showing the hours of service worked provided adequate notice regarding her denial, and afforded her the opportunity to appeal.  The administrator met the ERISA requirement for full and fair review in denying pension benefits to plaintiff and had a reasonable basis for doing so.  The existing conflict does not call into question the administrator's decision.

The court must give deference to Jefferson's decision and does not engage in de novo review.  In sum, the decision of Jefferson was not arbitrary and capricious.  The motion of defendants Jefferson Defined Benefit Plan and Thomas Jefferson University for summary judgment as to Count I will be granted, and the cross-motion of plaintiff for summary judgment will be denied.

V

Plaintiff claims in Count II of the complaint that Jefferson, as plan administrator, is liable for a document

-19-

penalty of $110 per day for withholding documents under Section 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1).  The following relevant facts are undisputed.

On October 13, 2021, plaintiff's counsel sent a letter addressed to the plan administrator of the AMH Plan, Francis J. Cummings, Director of Corporate Benefits of AMH, and David Levin, of the AMH Corporate Benefits department.  In it, her counsel requested "the latest updated summary plan description, the Plan document itself, the latest Plan annual report, any terminal report, the bargaining agreement, trust agreement, contract, and any other instrument under which the applicable Plans operate."  Significantly, the letter also stated in a stand-alone sentence: "please send me a current statement of Ms. Carr's retirement benefit account(s)."  Plaintiff's counsel followed up with a second letter to the same addressees on November 1, 2021 which reiterated these requests.  He also sent a copy of this second letter to Thomas Jefferson University "via USPS First Class and Priority Mail."  On December 9, 2021, Cummings spoke with plaintiff's counsel regarding plaintiff's retirement benefits but failed to provide counsel with the correct contact information for the Jefferson Plan administrator.  As a result, counsel followed up via email with Cummings on December 9, December 15, and December 22, 2021.

These emails requested that Cummings forward plaintiff's October 13 and November 1 letters to the plan administrator.

On December 22, 2021, John Parkinson, the Director of Retirement at Jefferson, emailed plaintiff's counsel in response.  He stated that the documents plaintiff requested were attached to the email and would be mailed to the office of plaintiff's counsel by December 23.  Parkinson's response provided the relevant plan documents but declined to provide a pension benefit statement because

> A review of the Plan's records indicates that Ms. Carr did not have a vested pension benefit entitlement from the Plan at her termination of employment on April 30, 2013. Therefore, no benefit statement from the Plan is enclosed. . . .  Plan records indicate that Ms. Carr did not complete five Years of Service with at least 1,000 hours during the course of her employment from January 13, 1997 through April 30, 2013.

On December 28, 2021, plaintiff's counsel requested "Ms. Carr's service records with a breakdown by year of her completed Hours of Service" as well as "records relating to Ms. Carr's accrued PTO benefits and all employee handbooks or rules relevant to PTO benefits."  On January 5, 2022, Parkinson provided a spreadsheet which noted that plaintiff had 950 hours of service in 1997, and more than 1,000 hours of service in 2003, 2010, 2011, and 2012.  Parkinson declined to provide further personnel or wage records absent a subpoena.

Plaintiff's counsel responded that same day.  He explained that such personnel and wage records would be necessary in order to "determine Ms. Carr's annual Hours of Service and entitlement to retirement benefits under the Plan." He reiterated this request on January 28, 2022.  On February 4, 2022, Kate Kleba, Associate General Counsel of Jefferson, responded that Section 105(a) of ERISA does not require Jefferson to provide "personnel and wage records" to plaintiff. See 29 U.S.C. § 1025(a)(1)(B)(ii).  Plaintiff's counsel repeated his request on July 22, 2022.  Jefferson denied this request again on August 16, 2022.

VI

Section 105 of ERISA requires that a plan administrator "furnish a pension benefit statement . . . to a participant or beneficiary of the plan upon written request." 29 U.S.C. § 1025(a)(1)(B)(ii).  Such participants or beneficiaries need not be current employees.  See 29 U.S.C. § 1002(7)-(8).  A pension benefit statement must indicate the total benefits accrued and the nonforfeitable pension benefits, if any, which have accrued, and the earliest date on which benefits will become nonforfeitable.  29 U.S.C. § 1025(a)(2)(A)(i).  Such statement must be provided within thirty days of the request.  29 U.S.C. § 1132(c)(1).  Plaintiff maintains in Count II that Jefferson failed to provide her with

-22-

the following three items: (1) a pension benefit statement, (2)
personnel and wage records from 1997, and (3) a January 1998
pension valuation.

Plaintiff argues the court should impose a penalty
pursuant to Section 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1),
for Jefferson's failure to provide these documents to her within
the mandated thirty days.  Section 502(c)(1) states that "[a]ny
administrator" who fails to meet the requirements of Section
105(a) or other sections of ERISA:

> [M]ay in the court's discretion be
> personally liable to such participant or
> beneficiary in the amount of up to $100 per
> day from the date of such failure or
> refusal, and the court may in its discretion
> order such other relief as it deems proper.

Id.

A plan administrator is only required to provide a
pension benefit statement to beneficiaries or participants.  A
participant is a person with a "colorable claim to vested
benefits[.]"  Miller v. Rite Aid Corp., 334 F.3d 335, 342 (3d
Cir. 2003) (citing Firestone Tire, 489 U.S. at 117-18)).  A
colorable claim is defined as one which is non-frivolous and
made in good faith.  See Ericson v. Greenberg & Co., P.C., 118
F. App'x 608, 610-11 (3d Cir. 2004).  It was undisputed that
plaintiff had four years of vested service with AMH with only
1997, the fifth year, contested.  Her social security records

showed she had earned more during 1997 than the Jefferson Plan
had on record.  By dividing her earnings as stated in the social
security records by her hourly rate, the number of hours she
worked in 1997 would exceed 1,000.  Although she did not
prevail, her claim was colorable.  It was not frivolous and was
made in good faith.

Jefferson argues a penalty should not be imposed on
the basis of plaintiff's October 13, 2021 letter because it was
not addressed to Thomas Jefferson University and therefore the
plan administrator was not on notice of the request.
Nonetheless, Jefferson does not dispute that the letter was
received and reviewed by Cummings, who was employed by Jefferson
and who had some responsibility as to the AMH Plan.  This
October 13, 2021 letter serves as clear notice to Jefferson of
plaintiff's request.

Jefferson further maintains that the letters sent by
plaintiff's counsel did not put Jefferson on "clear notice"
because plaintiff did not request a pension benefit statement as
characterized by Section 105(a).  See Kollman v. Hewitt Assocs.,
LLC, 487 F.3d 139, 144-45 (3d Cir. 2007).  Although plaintiff's
counsel did not cite Section 105(a)(1)(B)(ii) in his October 13,
2021 letter, he specifically requested a "current statement of
[plaintiff's] retirement benefit account(s)."  Citing the
specific subsection of the statute is not necessary.  The words

-24-

used were sufficiently precise to serve as "clear notice" that plaintiff requested a pension benefit statement.  In any event, Jefferson understood that a provision benefit statement was requested since in its response, dated December 22, 2021, it stated that "no benefit statement from the Plan is enclosed."

Jefferson does not dispute that Cummings received the October 13, 2021 letter, which was sent via First Class and Priority Mail.  However, the record does not disclose the date Cummings received it.  The letter was sent from an address in Philadelphia to an address in the Philadelphia suburbs.  Absent evidence to the contrary, it is reasonable to presume it was received at the latest, on October 16, 2021, three days after it was sent.  See Hayes v. N.J. Dep't of Hum. Servs., No. 23-1829, 2024 WL 3464517, at *2 (3d Cir. July 19, 2024) (precedential); see also Fed. R. Civ. P. 6(d).

Jefferson failed to respond to plaintiff's request until December 22, 2021. In that letter, John Parkinson, Director of Retirement at Jefferson, explained that plaintiff needed at least 1,000 hours in five years of service in order to have a vested pension benefit entitlement.  However, Jefferson's records determined "that Ms. Carr did not have a vested pension benefit entitlement from the Plan at her termination of employment on April 30, 2013."  Plaintiffs contend that this explanation is not a pension benefit statement.  While it may

-25-

not have been called a pension benefit statement, it contained
the essential information of such a statement.  Pursuant to
Section 105(a)(2)(A), it set forth "on the basis of the latest
available information" that plaintiff had not accrued any
benefits in a manner "calculated to be understood by the average
plan participant[.]"  29 U.S.C. § 1025(a)(2)(A).

It is the plan administrator who is supposed to know
the terms of the Pension Plan, a complex legal document, and the
relevant information pertaining to the participant.  The
salutary purpose of supplying a participant with a pension
benefit statement is to apprise the participant of the status of
the participant's benefits or potential benefits, whether vested
or inchoate.  What plaintiff received on December 22, 2021
served that purpose.

Later correspondence by plaintiff's counsel suggests
that he interpreted the letter as providing the essence of a
pension benefit statement.  Though he reiterated his requests
for an accounting of plaintiff's retirement benefits in an email
dated December 28, 2021 to Jefferson, plaintiff's counsel does
not pursue his request for a pension benefit statement after
receipt of Parkinson's December 22, 2021 explanation.

Any pension benefit statement must be furnished within
thirty days after receipt of the request.  The statute provides
for a penalty of $110 per day for an untimely response.

-26-

29 U.S.C. § 1132(c)(1).  Jefferson failed to provide a pension benefit statement until December 22, 2021, sixty-seven days after October 16, the day it is presumed that Jefferson received the October 13, 2021 letter.  A response was thirty-seven days overdue.

Jefferson maintains that Romero v. SmithKline Beecham, 309 F.3d 113, 120 (3d Cir. 2002), requires that the court find that the plan administrator's delay prejudiced plaintiff before the court may impose a penalty.  309 F.3d 113, 120 (3d Cir. 2002).  The court disagrees.  While prejudice to the plaintiff is one of the appropriate factors to be considered, Romero did not hold that prejudice is an essential condition to imposition of a penalty.  The Court of Appeals cited decisions where prejudice was not a sine qua non.  See id. (citing Bannistor v. Ullman, 287 F.3d 394, 407 (5th Cir. 2002); Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan, 263 F.3d 196, 204 n.11 (2d Cir. 2001)).

The response of Jefferson in furnishing to plaintiff the information related to a pension benefit statement, as noted above, was 37 days late.  Jefferson provided no excuse for being dilatory and acted only after several follow-up letters from plaintiff's counsel.  While plaintiff may not have been prejudiced, Jefferson's conduct was intentional.  The court notes that the duty imposed by Congress on plan administrators

-27-

under Section 502(c) to act in a timely fashion is not precatory.  See 29 U.S.C. § 1132(c).  The court will exercise its discretion to award plaintiff a penalty of $4,070 ($110 x 37 days) for this lapse.

Plaintiff also seeks in Count II the imposition of a penalty against Jefferson for its failure to provide personnel and wage records from 1997 and a 1998 pension valuation. She maintains that Section 105(a), 29 U.S.C. § 1025(a), required their production because that subsection "should be interpreted broadly to accommodate a plan participant's request that the administrator provide the computations to support the amount stated." Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Plan & Tr. Agreement, 822 F. Supp. 247, 264 (E.D. Pa. 1993), rev'd in part, 24 F.3d 1491 (3d Cir. 1994).  However, Section 502(c) of ERISA, as a statutory penalty provision, is strictly construed.  It only requires the administrator to furnish a pension benefit statement stating the total benefits accrued and nothing else.  Where "Congress has not plainly and unmistakably established that [Section] 502(c) penalties should be applied to violations of the kind here at issue," the court should decline to interpret the penalty provision to embrace such violations. Groves v. Modified Ret. Plan for Hourly Paid Emps. of Johns Manville Corp. & Subsidiaries, 803 F.2d 109, 118 (3d Cir. 1986).  Plaintiff's request to be provided with other

documents does not fit within the definition of a pension benefit statement.

Accordingly, plaintiff's motions for summary judgment in Count II for a penalty will be granted in the amount of $4,070.  Defendant's motion for summary judgment in Count II will be denied.